# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ERIN J. BUCKLEY,**                              Case No. 5:19 CV 424

     Petitioner,                              Judge Dan Aaron Polster

     v.                                      Magistrate Judge James R. Knepp II

**STATE OF OHIO,**

     Respondent.                        **REPORT AND RECOMMENDATION**

## INTRODUCTION

*Pro se* Petitioner Erin J. Buckley ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Shelbie Smith ("Respondent")[1] filed a Return of Writ/Answer (Doc. 8) and Petitioner filed a Traverse/Reply (Doc. 9).[2] The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated April 23, 2019). For the reasons discussed below, the undersigned recommends the Petition be DENIED.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by

---

1. Although Petitioner named the State of Ohio as Respondent in her Petition, *see* Doc. 1, at 1, Warden Shelbie Smith of the Dayton Correctional Institute where Petitioner is incarcerated is the appropriate party respondent as she is the person with custody over Petitioner. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004); Doc. 8, at 1.
2. Parties and Courts commonly use the terms "Return of Writ" and "Traverse" to refer to what the Rules Governing Section 2254 Cases now term an "Answer" and "Reply". *See* Rule 5 of the Rules Governing Section 2254 Cases.

clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. On direct appeal, the Ohio Fifth District Court of Appeals set forth the following facts:

{¶ 2} On November 14, 2016, shortly after seven o'clock in the evening, Canton Police Detective Darrell Pierson was working an off-duty job at the Canton Walmart. For such jobs, Pierson would be in uniform, and was assigned for this particular job to stand by the general merchandise doors to handle any problems with customers walking out without paying for merchandise. Walmart had many problems with this kind of theft, and thus Pierson positioned himself by the cash register that was closest to the exit doors.

{¶ 3} While working this job, Pierson saw a female identified as Buckley walk down the action alley aisle, which is past the registers, and heading towards the exit doors, avoiding the sensors. Buckley had a large duffel bag on her shoulder, and Pierson could see merchandise inside it. In addition, Buckley was walking briskly. Suspecting a possible shoplifting, Pierson approached Buckley and asked her to come with him. As Buckley made it through the exit doors, however, she turned back, looked at Pierson, and took off running.

{¶ 4} Pierson responded by running after Buckley, who headed straight for a green four-door car parked nearby. He could still see the unpaid merchandise inside Buckley's duffel bag as he caught up to her, so he grabbed her arm in order to effect an arrest. Buckley managed to slip out of her coat in trying to get away. Troy Anthony Gordon, who was sitting in the front passenger seat of this car, got out, grabbed Pierson's wrist, and attempted to pull the detective's hand off Buckley. In response to this action, Pierson pulled his baton out and ordered Gordon not to interfere and to get back into the car. Due to the distraction, Buckley was able to get into the rear passenger seat of the car. Gordon got into the front passenger seat.

{¶ 5} Pierson thought that the car might try to drive away, so he went to the rear of the car to get its license plate number. Going to the front of the vehicle would have put Pierson between the car and another parked ear. As he was reading off the license plate number, Pierson saw the reverse lights of the car go on. Pierson immediately ordered the driver to stop or he would shoot, having drawn his handgun. Pierson heard the driver of the car say that he—Pierson—would not get out of the way. Getting out of the way, Pierson holstered his gun and went to the driver's window with his baton. His repeated orders to stop the car and for all of the occupants to put their hands were being ignored, so Pierson broke out the driver's window with is baton. During this melee, Pierson also called for backup.

{¶ 6} Unbeknownst to Pierson, several bystanders observed this confrontation. George Jordan, a retired Perry Township police officer, went to assist Pierson when he saw the commotion upon leaving the store with his wife. As he approached the car, ready to draw his handgun, Jordan watched as Buckley opened the rear passenger door in an effort to pick up the duffel bag she had dropped when Pierson first grabbed her. Pierson was on the driver's side of the vehicle, trying to get the car to stop. Jordan saw that Pierson's repeated orders were being ignored.

{¶ 7} John Bowman was in his electric cart when he saw the commotion involving Pierson and Buckley. He was also leaving the store and was going to get in his van, which was parked nearby in the handicap section. Bowman heard Pierson yell at the people in the car to stop, and saw the detective take out his baton, smashing the driver's window. Bowman estimated that Pierson gave some 30 commands, all of which were ignored. He also saw the car back up and almost hit Pierson, which scared Bowman quite a bit.

{¶ 8} Bonnie Davis, the mother of a Canton police officer, was waiting in her parked car in the parking lot for her granddaughter to get off work at Walmart. As she was waiting, she heard the commotion at a car that was three to four feet away from her. She saw Pierson trying to stop the escape of the people in the car, which led to Pierson standing behind the car, gun drawn, ordering them to stop. Fearing for the Pierson's safety, Davis called 9–1–1 on her cell phone. The car, she testified, could have hit Pierson, as it was initially backing up. While on the phone, she heard Pierson order the driver to put his hands on the wheel, heard glass being broken, and saw the car driving away after a cruiser pulled up and another officer joined the chase.

{¶ 9} Canton Police Officer Brian Dougherty responded to the Walmart parking lot in response to Pierson's call for backup. Arriving in his cruiser, the uniformed officer found Pierson, gun drawn, yelling commands at the trio of suspects. Dougherty also drew his gun and barked similar commands at the suspects. Instead of complying, the car backed up and left the scene. Dougherty jumped back in his cruiser and gave chase, lights and siren on, stopping the fleeing vehicle several blocks or miles away. The occupants again did not comply with his orders about putting their hands up and getting out of the vehicle. Once Gordon was pulled out of the vehicle and handcuffed, the other two became more compliant and exited the car without incident.

{¶ 10} Detective Pierson remained behind at the Walmart parking lot. Pierson retrieved the duffel bag and had Walmart personnel determine the value of the stolen merchandise. Buckley had attempted to shoplift items totaling a little over $300, mainly female apparel and clothing. Pierson also retrieved the security camera video of Buckley's activities both inside and outside the store.

!

{¶ 11} The three individuals were all charged with one count of aggravated robbery as principal offenders or alternatively as accomplices. The charge arose from the use of their get-away car as a deadly weapon against one of the police officers who was trying to stop these individuals' escape. The other charges included in the indictment were specific to the individual defendants' conduct.

{¶ 12} The driver of the car opted to plead guilty on the day of trial, and Buckley opted to plead guilty to the identity theft charge during the trial and her resisting arrest charge was dismissed.

{¶ 13} Gordon and Buckley were tried together and the jury found Gordon and Buckley guilty of these offenses. The trial court thereafter sentenced Gordon to an eight-year prison term for the aggravated robbery. The court also sentenced Buckley to an aggregate prison term of eight years.

*State v. Buckley*, 2017 WL 6764726, at *1-2 (Ohio Ct. App.) (footnote omitted).

## PROCEDURAL HISTORY

State Court Conviction

In December 2016, a Stark County grand jury indicted Petitioner on charges of aggravated robbery, identity fraud, petty theft, and resisting arrest. (Ex. 1, Doc. 8-1, at 4-5). On January 13, 2017, the State filed a response to a request for discovery. (Ex. 2, Doc. 8-1, at 7-35). It contained, *inter alia*, a police report listing George Jordan as a witness to the crime. *Id.* at 14.

After originally pleading not guilty, Petitioner entered a guilty plea to the identity fraud charge (Ex. 3, Doc. 8-1, at 36-37), and the State dismissed the resisting arrest charge (Ex. 4, Doc. 8-1, at 53). In April 2017, a jury found Petitioner guilty on the remaining counts of aggravated robbery and petty theft. *See* Ex. 5, Doc. 8-1, at 54-55. The trial court sentenced Petitioner to eight years imprisonment on the aggravated robbery conviction, twelve months imprisonment on identity fraud, and 180 days of local incarceration on the petty theft charge. *Id.* at 55-56. It ordered the sentences to be served concurrently. *Id.* at 56.

4

Direct Appeal

On May 23, 2017, Petitioner, through new counsel, filed a notice of appeal with the Fifth

District Court of Appeals. (Ex. 6, Doc. 8-1, at 58). In her brief, she raised two assignments of error:

1. The trial court's finding of guilt is against the sufficiency and manifest weight
of the evidence.

2. The Defendant was denied her effective assistance of counsel as guaranteed by
the Constitution of the United States and Article 1 Section 10 of the Constitution
for the State of Ohio.

(Ex. 7, Doc. 8-1, at 63-76) (capitalization altered). The State filed a brief in response (Ex. 8, Doc.

8-1, at 88-104), and on December 29, 2017, the appellate court overruled Petitioner's assignments

of error and affirmed the judgment of the trial court (Ex. 9, Doc. 8-1, at 105-21); *Buckley*, 2017

WL 6764726.

On February 5, 2018, Petitioner filed a *pro se* request for reconsideration. (Ex. 10, Doc. 8-

1, at 122-24. On February 27, 2018, the appellate court denied Petitioner's request. (Ex. 11, Doc.

8-1, at 125-26).

On March 30, 2018, Petitioner filed a *pro se* notice of appeal with the Ohio Supreme Court.

(Ex. 12, Doc. 8-1, at 127-29). She also filed a motion for leave to file a delayed appeal, asserting

that she had not received notice of the appellate court's motion for reconsideration until March 28,

2018. (Ex. 13, Doc. 8-1, at 131). The docket sheet confirms that the reconsideration denial was

mailed to Petitioner's counsel on February 27, 2018, but was not mailed to Petitioner directly until

March 23, 2018. *See* Ex. 16, Doc. 8-1, at 150) (noting "[s]hould have been served on 2-27-18 –

sent on 3-23-18 – due to clerical error"). On May 23, 2018, the Ohio Supreme Court denied

Petitioner's motion for delayed appeal and dismissed the case. (Ex. 14, Doc. 8-1, at 142).

### FEDERAL HABEAS CORPUS

In her Petition, filed February 13, 2019[3], Petitioner raises four grounds for relief:

**GROUND ONE:**      Counsel was ineffective in investigation & preparation.

**Supporting facts:**      On 1-17-17 counsel signed for receipt of discovery in which was listed all witnesses against me & during my trial (4-18-17) during cross-examination of George Jordan counsel state he knew said witness but had no idea he was a part of the trial until just then.

**GROUND TWO:**      Counsel had a conflict of interest.

**Supporting facts:**      Counsel admitted during trial on the record that he and a witness against me were friends.

**GROUND THREE:**  Counsel failed to subject prosecution's case to meaningful adversarial testing.

**Supporting facts:**      During trial 2 of the state's witnesses testified to things that video evidence proved were not truths. Both of said witnesses were key witnesses and counsel should have moved to strike evidence.

**GROUND FOUR:**      Counsel's performance fell below an objective standard of reasonableness.

**Supporting facts:**      Counsel did not move to suppress evidence, conduct adequate investigation, failed to maintain adequate communication with me; only came to the county jail once to deliver my discovery and then not again until April 14th (3 days prior to trial start) to discuss a plea deal, but never to prepare me for trial. On the 15th to offer a plea (same deal) on the 17th for me to sign financial papers.

(Doc. 1, at 5, 7, 8, 10) (capitalization altered).

---

3. Pursuant to the federal prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). *See* Doc. 1, at 15 (representing Petition was placed in the prison mailing system on February 13, 2019).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

7

DISCUSSION

Respondent asserts Grounds One, Three, and Four are procedurally defaulted and Ground Two fails on AEDPA merits review because the state court determination was not contrary to nor an unreasonable application of clearly established federal law. Petitioner, in Reply, disputes Respondent's characterization of Grounds One, Three, and Four, arguing she adequately presented these grounds in her direct appeal brief and thus did not default them. She further argues the merits of Ground Two. For the reasons discussed below, the undersigned recommends the Court find Grounds One, Three, and Four procedurally defaulted and deny Ground Two on the merits.

<u>Exhaustion & Procedural Default</u>

In order to seek a writ of habeas corpus in federal court, a petitioner must first satisfy the requirements of 28 U.S.C. § 2254(b)(1)(A), which provides: "[a]n application for a writ of habeas corpus ... shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State". Exhaustion requires a petitioner to "fairly present" federal claims "to the state courts, including the state court of appeals and the state supreme court." *Bray v. Andrews*, 640 F.3d 731, 734–35 (6th Cir. 2011) (citing *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This is to "alert[] [the state court] to the fact that the prisoner[ ] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (internal quotation marks omitted) (citations omitted). In order to accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts before habeas relief. *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275). Hence, "a habeas petitioner must present both the factual and legal underpinnings of his [or her] claims to the state courts." *Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)); *see also Williams v. Bagley*,

8

380 F.3d 932, 969 (6th Cir. 2004) (a claim is fairly presented if that "claim [has been] presented to the state courts under the same legal theory in which it is later presented in federal court.") (quoting *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)) (alteration in *Williams*). In the context of ineffective assistance claims in a habeas proceeding, "to the extent that [such a] claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented to the state courts." *Caver v. Straub*, 349 F.3d 340, 346-47 (6th Cir. 2003)

Related to exhaustion is the concept of procedural default, which can occur in two ways. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim may be procedurally defaulted if a petitioner "fail[s] to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Id.* (quoting *O'Sullivan*, 526 U.S. at 848-47). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan*, 526 U.S. at 845, 848. Additionally, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).

Hence, if a petitioner has failed to exhaust his state remedies and is barred from raising his claim by state law, his habeas claim is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848; *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009). One such bar is the doctrine of *res judicata*. Under Ohio law, *res judicata* bars petitioners from litigating claims that either could have or were fully litigated at trial or on direct appeal. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (citing *State v. Perry*, 10 Ohio St. 2d 175, 180 (1967)).

Second, a petitioner may procedurally default a claim if she fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Williams*, 460 F.3d at 806. If a petitioner fails to comply with a procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*; *see Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The Sixth Circuit "has consistently held that Ohio's doctrine of res judicata is an 'adequate and independent' ground justifying default." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006); *accord Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012).

In order to overcome procedural default, a petitioner must demonstrate both cause for the default and prejudice from the error. *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991)). "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren*, 440 F.3d at 764.[4]

Grounds One, Three, and Four

In Ground One, Petitioner asserts counsel was ineffective because, although he signed for receipt of discovery which listed witnesses, he did not realize George Jordan (who he knew) was a witness until he appeared at trial. (Doc. 1, at 5). Petitioner raises this as a claim that "[c]ounsel

---

4. A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a claim requires a petitioner "supplement[ ] a constitutional claim with a 'colorable showing of factual innocence.' " *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner presents no such claim or evidence here. *See* Docs. 1, 9.

was ineffective in investigation and preparation." *Id.* In Ground Three, Petitioner asserts counsel was ineffective for failing to move to strike testimonial evidence that contradicted video evidence. *Id.* at 8. And in Ground Four, Petitioner asserts counsel was ineffective for failing to move to suppress evidence, conduct an adequate investigation, and failing to sufficiently communicate with Petitioner. *Id.* at 10. Respondent asserts each of these grounds is procedurally defaulted because Petitioner did not raise ineffective assistance of trial counsel claims on these factual bases to the state courts. As noted above, Petitioner contests the default, asserting that she raised sufficiently similar issues in her appellate brief. For the reasons discussed below, the undersigned agrees with Respondent and recommends the Court find Grounds One, Three, and Four procedurally defaulted.

On direct appeal, Petitioner raised two arguments – one about sufficiency/manifest weight of the evidence, and one about ineffective assistance of trial counsel. *See* Ex. 7, Doc. 8-1, at 71-76. As to counsel – the relevant claim here – Petitioner first argued counsel was ineffective for failing to raise a Criminal Rule 29 motion for acquittal at the close of the state's case, arguing that "[t]his failure gives the impression that the state has proven all the elements in the charge, so no motion is necessary." (Ex. 7, Doc. 8-1, at 74). Petitioner does not raise this claim before this Court. Second, Petitioner argued that when counsel discovered he knew a witness, "he should have removed himself from the case". *Id.* Petitioner argued that counsel was ineffective for failing to object to that witness's opinion testimony regarding what constitutes a deadly weapon. *Id.* at 75.

Respondent is correct that Petitioner did not raise, on direct appeal, the arguments presented in Grounds One, Three and Four. Petitioner attempts to argue that she in fact did so by pointing to arguments raised in her sufficiency/manifest weight of the evidence argument on direct appeal. *See* Doc. 9, at 9. But raising such arguments in the context of a sufficiency or manifest weight argument is not the same as raising arguments that counsel was ineffective for moving to

11

strike testimony, or failure to prepare for trial. *See Caver*, 349 F.3d at 346-47 ("[T]o the extent that an ineffective assistance of counsel claim is based upon a different allegedly ineffective action than the claim presented to the state courts, the claim has not been fairly presented[.]"). Petitioner thus failed to exhaust the ineffective assistance of trial counsel claims in Grounds One, Three, and Four.

Having found these grounds unexhausted, the undersigned turns to whether they are also procedurally defaulted. The Sixth Circuit has described Ohio's "dual-track system" for ineffective assistance of trial counsel claims:

> Ohio has two forms of IATC claims. *McGuire v. Warden*, 738 F.3d 741, 751 (6th Cir. 2013), *cert. denied*, *McGuire v. Robinson*, ——— U.S. ———, 134 S.Ct. 998, 187 L.Ed.2d 847 (2014). Claims based on evidence wholly *within* the trial record must be brought on direct appeal, while claims based on evidence *outside* the trial record cannot be brought on direct review and must be raised in a petition for state post-conviction relief. *Id.* (citing *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (1982)). In this dual-track system, *res judicata* bars an IATC claim brought in a state post-conviction petition that relies on evidence within the trial record, because such a claim could have been brought on direct appeal. *Id.* (citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, 108 (1967)).

*Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016).

Thus, to the extent that Petitioner's ineffectiveness claims are based on evidence inside the trial record, she was required by Ohio law to raise them on direct appeal. *See id.* Review of the Petition reveals that Ground One is based on evidence within the trial record. *See* Doc. 1, at 5 ("On 1-17-17 counsel signed for receipt of discovery in which was listed all witnesses against me & during my trial (4-18-17) during cross-examination of George Jordan[,] counsel stated he knew said witness but had no idea he was part of the trial until just then."); Doc. 9, at 11 (citing Ex. 2, Doc. 8-1, at 14 (police report listing George Jordan as a witness in State's response to discovery request) and Ex. 3, Doc. 8-1, at 44-45, 50 (discovery receipt signatures)). The same is true for Ground Three. *See* Doc. 1, at 8 ("During trial 2 of the State's witnesses testified to things that

video evidence proved were not truths. Both of said witnesses were key witnesses and counsel should have moved to strike evidence."); *see also* Doc. 9, at 11-12 (citing allegedly contradictory trial evidence). Further, at least part of Ground Four appears to be based on evidence inside the record. *See* Doc. 1, at 10 ("Counsel did not move to suppress evidence, conduct adequate investigation." ).[5] Because these claims were based on the trial record, Ohio law required Petitioner to raise them on direct appeal. *See Seymour*, 224 F.3d at 555 (citing *Perry*, 10 Ohio St. 2d at 180). Because she did not, Ohio's *res judicata* bar would prevent her from now bringing them. *See id.* Thus, Grounds One and Three are procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848; *Williams*, 460 F.3d at 806. They may therefore only be considered if Petitioner can show cause and prejudice to overcome to overcome the default, or actual innocence.

To the extent Petitioner's ineffectiveness claims are based on evidence outside the record, she was required to raise them in a state post-conviction relief petition. *See Hill*, 842 F.3d at 936 (citing *Cole*, 2 Ohio St. 3d 112). Ground Four is arguably based in part on evidence outside the trial record. *See* Doc. 1, at 10 ("Counsel did not . . . conduct adequate investigation, failed to maintain adequate communication with me; only came to the county jail once to deliver my discovery and then not again until April 14th (3 days prior to trial start) to discuss a plea deal, but never to prepare me for trial. On the 15th to offer a plea (same deal) [and] on the 17th for me to sign financial papers."). The extent of counsel's investigation and his communication with

---

5. Neither the Petition, nor the Reply identifies the evidence Petitioner contends counsel should have moved to suppress. *See* Docs. 1, 9. To the extent Petitioner refers to counsel's failure to move to strike certain testimony, that claim is also part of the trial record, and part of Ground Three. Moreover, Petitioner seems to acknowledge that these claims in Ground Four were not raised on direct appeal. *See* Doc. 1, at 10 (box checked indicating issue was not raised on direct appeal and explaining that this was because her appellate attorney "did not speak with [her] to know these things prior to filing [her] appeal.").

Petitioner are arguably issues outside the trial record and could not have been raised on direct appeal.

Ohio law requires that a post-conviction petition must be filed no later than 365 days after the date on which the transcript is filed in the court of appeals on direct appeal of a conviction. *See* Ohio Rev. Code. § 2953.21(A)(2). The record here reveals the transcript was filed June 30, 2017 (Ex. 15, Doc. 8-1, at 147; Ex. 16, Doc. 8-1, at 149). Thus, Petitioner's time for filing a post-conviction petition is expired. The statute contains exceptions for late post-conviction petitions if:

> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

Ohio Rev. Code § 2953.23(A)(1). Petitioner's claim is not based upon any new right recognized by the United States Supreme Court, nor has she shown by clear and convincing evidence that no reasonable factfinder would have found her guilty. Moreover, there is no indication that Petitioner "was unavoidably prevented" from discovering the facts upon which her claims are based; to the contrary, the Petition acknowledges her knowledge of them at the time of trial. *See* Doc. 1, at 10. Thus, the undersigned finds it would be futile for Petitioner to return to state court to attempt to file a belated post-conviction petition on this basis. *See Johns v. Clipper*, 2012 WL 3239099, at *5 (N.D. Ohio) ("Johns has not shown that he could meet the requirements to file a delayed petition under Ohio Rev. Code § 2953.23(A), thus the court finds it would be futile to attempt to present

this claim to the state courts now."), *report and recommendation adopted*, 2012 WL 3238843; *see also Jefferson v. Warden, Chillicothe Corr. Inst.*, 2014 WL 7272232, at *4 (S.D. Ohio) ("The time has long passed for Petitioner to file a timely post-conviction proceeding, so any ineffective assistance of counsel claim which relies on evidence outside the record—as his third ground for relief appears to do—is also procedurally defaulted."), *report and recommendation adopted*, 2015 WL 247987. The undersigned presumes the state court would apply its timeliness bar to Petitioner's ineffective assistance of counsel claims based on evidence outside the record. Thus, this portion of Ground Four is also procedurally defaulted and may only be considered if Petitioner can show cause and prejudice to overcome the default.

The only assertion of "cause" the undersigned can discern from Petitioner's filings is ineffective assistance of appellate counsel. *See* Doc. 1, at 10 ("Appellate Attorney Bernard L. Hunt did not speak with me to know these things prior to filing my appeal."). An ineffective assistance of counsel claim may serve as cause to overcome a procedural default, but only if that ineffectiveness claim is itself properly preserved. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000); *see also Williams v. Lazaroff*, 648 F. App'x 548, 554 (6th Cir. 2016). But Petitioner cannot use such a claim as cause here because she has failed to exhaust it and it is defaulted. That is, Petitioner did not timely raise a claim of ineffective assistance of *appellate* counsel for failing to raise ineffective assistance of *trial* counsel on these factual bases to the state courts. Ohio Appellate Rule 26(B) requires that an application for reopening a direct appeal – the mechanism by which one can raise an ineffective assistance of appellate counsel claim in Ohio – to be filed within 90 days of the journalization of the appellate judgment. Petitioner did not raise such a claim, and the time in which to do so has expired. Because this claim is itself procedurally defaulted, Petitioner cannot use it as cause to overcome the default of Ground Four. *See Edwards*, 529 U.S. at 451-53.

Moreover, to the extent Petitioner's claim is procedurally defaulted for failure to raise it in a timely post-conviction petition under Ohio Revised Code § 2953.21, she cannot assert ineffective assistance of counsel as cause. This is so because "[t]here is no right to counsel in post-conviction proceedings". *See Coleman*, 501 U.S. at 752. Further, as noted above, Petitioner has not presented "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial" *Schlup*, 513 U.S. at 324, demonstrating her innocence. *See* Docs. 1, 9.

For these reasons, the undersigned recommends the Court deny Grounds One, Three, and Four as procedurally defaulted.

Merits Review

In Ground Two, Petitioner asserts counsel had a conflict of interest, specifically pointing to the fact that "counsel admitted during trial, on the record, that he and a witness against [Petitioner] were friends." (Doc. 1, at 7). Respondent contends that Ground Two fails on the merits under AEDPA review.[6] The undersigned agrees with Respondent and recommends Ground Two be denied.

A defendant has "a Sixth Amendment right to conflict-free representation by [her] counsel." *Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006). For a habeas petitioner to establish a violation of this right, she must satisfy two components. First, she must show that counsel's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v.*

---

6. Petitioner contends she was "denied the chance t[o] present her claims to the State's highest court" due to a clerical error when the Ohio Supreme Court denied her motion for delayed appeal. (Doc. 9, at 13). However, Respondent does not argue this claim is procedurally defaulted, and instead addresses it on the merits. The undersigned finds it appropriate in the circumstances to do the same.

*Washington*, 466 U.S. 668, 687 (1984). Second, she must show prejudice, which is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Review of counsel's performance is "highly deferential" and requires the court "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

" petitioner can satisfy the above standard by showing that her counsel labored under an "actual conflict of interest." *See Strickland*, 466 U.S. at 692 (holding that proof of an actual conflict satisfies ineffectiveness prong, and creates a presumption of prejudice) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348–50 (1980)). The presumed prejudice standard of *Cuyler*, however, only applies when the conflict is based on concurrent representation, *see Jalowic v. Bradshaw*, 657 F.3d 293, 314-15 (6th Cir. 2011); it does not apply to conflict asserted based on successive representation, and in other cases, a habeas Petitioner must show prejudice, *Whitings v. Burt*, 395 F.3d 602, 619 (6th Cir. 2005). "An actual conflict . . . is a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n. 5 (2002). That is, an "actual" conflict is one that "affected counsel's performance—as opposed to a mere theoretical division of loyalties." *Id.* at 172.

Petitioner raised, and the Ohio Fifth District Court of Appeals rejected, this claim on direct appeal, finding Petitioner has not shown prejudice from the alleged conflict of interest

> {¶ 39} In her second assignment of error, Buckley contends that she was denied the effective assistance of trial counsel. Specifically, Buckley cites to two incidents of alleged ineffectiveness: 1). trial counsel's failure to make a Crim.R. 29 motion for acquittal after the presentation of evidence; 2) trial counsel's failure to remove himself from the case when he discovered he was a friend of a key witness for the state, retired police officer George Jordan. Appellant's Brief at 7.
>
> **STANDARD OF APPELLATE REVIEW.**

17

{¶ 40} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶ 41} In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

{¶ 42} The United States Supreme Court discussed the prejudice prong of the *Strickland* test,

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. ——, ——, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689–690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S.Ct. 2052; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it

deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

{¶ 43} *Harrington v. Richter*, 562 U.S. 86, 104–105, 131 S.Ct. 770, 777–778, 178 L.Ed.2d 624(2011).

{¶ 44} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley*, 42 Ohio St.3d at 143, 538 N.E.2d 373, *quoting Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).

\* \* \*

B. Whether Buckley was prejudiced by his attorney's failure to remove himself upon discovery that he was friends with a state's witness.

{¶ 49} As we noted in our statement of *Facts and Procedural History*, *supra,* George Jordan, a retired Perry Township police officer, went to assist Detective Pierson when he, Jordan, saw the commotion upon leaving the store with his wife. As he approached the car, ready to draw his handgun, Jordan watched as Buckley opened the rear passenger door in an effort to pick up the duffel bag she had dropped when Pierson first grabbed her. Pierson was on the driver's side of the vehicle, trying to get the car to stop. Jordan saw that Pierson's repeated orders were being ignored.

{¶ 50} In the case at bar, the jury observed video evidence from a security camera at Walmart, a police cruiser and a bystander that displayed the events in real time. The jury heard the testimony of five witnesses concerning the actions, verbal commands and actions of each of the parties.

{¶ 51} The evidence showed that Buckley intended to get away along with her colleagues. She was willing to run to the car and pull away from Pierson's grasp. Buckley leaned out of the moving car in order to try to retrieve her duffel bag that she had dropped during the confrontation with Pierson. The jury could find that this evidence contradicts her contention that she was not willing to go along with her colleagues' intent to use the car to affect their successful escape. There is little if any probability that the admission of Jordan's testimony improperly affected the outcome of the trial.

{¶ 52} Buckley has failed in her burden to demonstrate a reasonable probability that, but for counsel's failure to remove himself from the case, the result of the proceeding would have been different.

*Buckley*, 2017 WL 6764726, at \*6-7.

The record reflects that Petitioner's trial counsel discovered, at trial, that he knew one of the state's witnesses, George Jordan. (Tr. Vol. 1, Doc. 8-4, at 181-82).[7] Petitioner asserted to the state court that her Sixth Amendment right to counsel was violated when counsel continued to represent her after this discovery. (Ex. 7, Doc. 8-1, at 75). As prejudice from this alleged ineffectiveness, she asserted that Jordan's testimony, as an eyewitness "weights heavy with the jury" and that she was prejudiced by counsel's failure to object to – or explore on cross-examination – Jordan's "opinion testimony" that a car is a "deadly weapon." *Id.* ("The prejudicial testimony of Mr. Jordan was not explored on cross examination or objected to on direct.").

Petitioner references the following exchange at trial:

[Prosecutor]:   At one point you said that you were, that you were there, you had shown your identification and that you were considering or getting ready to, to pull your own handgun.

[Jordan]:        Yes, sir.

[Prosecutor]:   Why were you considering that?

---

7. At the start of cross-examination, defense counsel and Jordan had the following exchange:
   Q:    Good afternoon.
   A:    Hi, how you doing, Pat?
   Q:    Good. Now we know each other, don't we?
   A:    Yes, sir.
   Q:    I just wanted everybody to be aware of that. I didn't realize you were a part of the case till [sic] today, did I?
   A:    I didn't know - - I didn't even know the judge - - it was in the judge's courtroom - -
   Q:    Okay. That's what I'm saying.
   A:    - - so . . .
   Q:    So we haven't spoken about this case prior to today.
   A:    Not at all, no.
   Q:    Okay, I just - - So, Your Honor, I wanted to make you aware that I did know this man and I didn't realize until today when I saw him here.

(Tr. Vol 1, Doc. 8-4,a at 181-82).

[Jordan]:  Well, I have a license. Okay? Well, because a car is a deadly weapon, you know. I mean, it can kill you, it can kill somebody else. And if he continued backing up with the people around in the back, because I knew there were people behind me, you know, I could hear them. There were people to my left and then, of course, the officer, and the people that are in the car. And I didn't know what they were going to do.

(Tr. Vol. 1, Doc. 8-4, at 179-80).

The appellate court reasonably determined that any error with regard to Jordan's testimony or counsel's failure to remove himself from the case was not prejudicial because there was "little if any probability that the admission of Jordan's testimony improperly affected the outcome of the trial", 2017 WL 6764726, at *7, given the video and testimonial evidence supporting Petitioner's conviction. Petitioner seemingly takes issue with the appellate court's summary of the facts in addressing her claim. She argues that her "intent was to escape, not to use the car as a deadly weapon, but once [she] saw that someone could get hurt she attempted to exit the car." (Doc. 9, at 13). But this Court must presume the findings of fact by the state court are correct unless Petitioner shows, by clear and convincing evidence, otherwise. *See* 28 U.S.C. § 2254(e)(1). She has not done so. As the state court found, the jury had before it "video evidence from a security camera at Walmart, a police cruiser and a bystander that displayed the events in real time". *Buckley*, 2017 WL 6764726, at *7. Further, it heard "the testimony of five witnesses concerning the actions, verbal commands and actions [sic] of each of the parties." *Id.* From this evidence, the state court concluded, "[t]he jury could find that this evidence contradicts her contention that she was not willing to go along with her colleagues' intent to use the car to affect their successful escape." *Id.* Petitioner has not presented evidence showing these factual findings to be incorrect, much less any "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

21

Moreover, as Respondent points out, the jury was instructed by the court regarding the definition of "deadly weapon" (Tr. Vol. 1, Doc. 8-4, at 255-56) (providing definition and stating that "[t]hese are questions for you to decide"), and further instructed that it was the jury's "province to determine what testimony is worthy of belief and what testimony is not worthy of belief", *id.* at 256. As juries are presumed to follow their instructions, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), this further supports to the state court's conclusion that there was no prejudice from the cited testimony by Jordan.

The undersigned therefore finds that the Ohio appellate court's decision finding no prejudice did not "result[] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or "result[] in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Put another way, the state court's decision finding Petitioner not prejudiced by counsel's asserted conflict of interest in knowing a witness was not "objectively unreasonable", *Williams*, 529 U.S. at 409-11, or "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. As such, the undersigned recommends Ground Two be denied.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be DENIED. Grounds One, Three, and Four are procedurally defaulted, and Ground Two fails on the merits under AEDPA review.

s/ James R. Knepp II
United States Magistrate Judge

22

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).